NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMEN CASTRO, | |
| Plaintiff, | Civil Action No. 15-188 (SRC) |
| v. | **OPINION** |
| PRATT INDUSTRIES, INC. et al., | |
| Defendants. | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion for summary judgment, pursuant to FED. R. CIV. P. 56, by Defendants Pratt Industries, Inc. and Pratt Display (collectively, "Pratt"). For the reasons set forth below, Defendants' motion will be granted.

## BACKGROUND

This case arises out of an employment dispute. Plaintiff Carmen Castro ("Castro") was first employed by Pratt in 2004, and she was discharged by Pratt in January of 2013. The Complaint states that Plaintiff is a Latina female. Plaintiff filed a Complaint which asserts six counts: 1) racial and national origin discrimination in violation of New Jersey's Law Against Discrimination ("NJLAD"); 2) employment discrimination by reason of gender in violation of NJLAD; 3) retaliation under the NJLAD; 4) discrimination and retaliation in violation of § 1981; 5) unequal pay under New Jersey law; and 6) unequal pay under the Federal Equal Pay Act. Defendants have moved for summary judgment on all counts in the Complaint.

**LEGAL STANDARD**

I.    **Summary Judgment**

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II. Employment Discrimination

A plaintiff alleging discriminatory discharge in violation of the NJLAD may prove her case by direct evidence or by circumstantial evidence. As the New Jersey Supreme Court has explained:

> To prove a discriminatory discharge case by direct evidence, a plaintiff must produce evidence that an employer placed substantial reliance on a proscribed discriminatory factor in making its decision to terminate the employee. . . . If direct evidence of discrimination is unavailable, a plaintiff may prove her claim

by circumstantial evidence. To evaluate circumstantial evidence cases, this Court has adopted the three-step burden-shifting test articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Grande v. Saint Clare's Health Sys., 230 N.J. 1, 16-17 (2017). The McDonnell Douglas test operates as follows:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases. Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual. The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases.

Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (citations omitted). The New Jersey Supreme Court has adopted the McDonnell Douglas test for most employment discrimination claims. Victor v. State, 203 N.J. 383, 408 (2010).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason" for the employer's action. McDonnell Douglas, 411 U.S. 792, 802 (1973). The employer may satisfy the burden by introducing evidence which, taken as true, would allow the factfinder to conclude that there was a nondiscriminatory reason for the unfavorable employment decision. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). The employer need not prove that the tendered reason actually motivated the decision. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). The burden of proving intent remains with the Plaintiff. Id.

If the defendant employer satisfies the burden, then "the plaintiff must 'submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons

or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Fakete v. Aetna, 308 F.3d 335, 338 n.3 (3d Cir. 2002). The plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow the factfinder to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

At this stage, the burden has shifted back to the plaintiff, and the plaintiff must show, by a preponderance of the evidence, that the employer's explanation is pretextual. Id. "The test is whether the plaintiff ultimately persuades the factfinder that the employment decision was caused by bias" and that the real reason for the employer's adverse employment decision is discrimination. Id.

## DISCUSSION

**I.     Defendants' motion for summary judgment**

Defendants move for summary judgment on the First Count in the Complaint, for discriminatory discharge on the basis of race and national origin,[1] in violation of the NJLAD. Defendants move for summary judgment on Plaintiff's claim that her termination was due to unlawful discrimination, in violation of the NJLAD, on three grounds: 1) Plaintiff cannot establish a *prima facie* case; 2) the termination was based on legitimate and non-discriminatory reasons; and 3) Plaintiff cannot show that these reasons are a pretext for illegal discrimination.

---

[1] The First Count in the Complaint is pled generally and does not identify the actions by Pratt that Castro contends violated the NJLAD. Defendants' motion for summary judgment on the First Count addresses a variety of alleged acts. In opposition, Plaintiff limits her arguments on the First Count to a claim of discriminatory discharge, and this Court will follow suit.

Defendants first argue that Plaintiff cannot establish a *prima facie* case. "The evidentiary burden at the *prima facie* stage is rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent – i.e., that discrimination could be a reason for the employer's action." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005) (citation omitted). Defendants contend that Plaintiff cannot meet this modest burden.

In opposition, Plaintiff argues that she has established a *prima facie* case that meets the requirements stated in Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).[2] In particular, Plaintiff argues that she was replaced by two Caucasian males. In reply, Defendants argue that Plaintiff has pointed to no evidence of record that she was replaced by two Caucasian males. Defendants have overlooked both the "Statement of Facts" section, as well as Plaintiff's responsive Rule 56.1 statement, both of which cite specific evidence that she was replaced in her job responsibilities by two Caucasian males. (Pl.'s Resp. to Defs.' 56.1 Stmt. § 92.) In view of the "modest" evidentiary burden required by the New Jersey Supreme Court at this step of the analysis, this Court finds that Plaintiff has made out a *prima facie* case of discriminatory discharge.

Defendants next argue that they are entitled to judgment on the First Count because they have articulated legitimate, non-discriminatory reasons for Plaintiff's discharge, and Plaintiff has no evidence that these reasons are a pretext for discrimination. Defendants point to evidence which, in short, supports Defendants' contention that Plaintiff was fired for inconsistent

---

[2] In Smith, the Third Circuit laid out four elements required to make out a *prima facie* case of age discrimination, and the fourth element is: "fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Id. Defendants do not contend that the Smith standard is inapplicable to this case.

6

performance and disruptive behavior. Defendants place particular emphasis on a problem which occurred in late 2012 when, Defendants contend, Plaintiff was responsible for the lateness of an order, which led to complaints from the affected customer, L'Oreal. Defendants offer as evidence an email from Laurie Houlihan (at L'Oreal) to John Keck (at Pratt), dated November 21, 2012, which states:

> This is a disaster. There are two displays that you have had quality issues with and now have to reprint. The ship dates have been completely blown. The Division was counting on these displays being able to ship.
> . . .
> We just found out today it was only because Kamela asked!

(Fox Cert. Ex. M at 1.) Defendants contend that, subsequent to this situation, Keck met with Plaintiff to discuss her performance, and presented her with this summary:

> There are multiple disappointments with this project and your performance:
>
> • The order placed too late to have any chance of meeting the timing. This is your responsibility.
>
> • There was no communication to L'Oreal to advise them that a delivery issue existed until the project was already late. This is your responsibility.
>
> As a result of this project, our business has been damaged with L'Oreal and placed us in a position of losing business with them. The VP Laurie Houlihan has spoken to me on three different occasions expressing her discontent with our performance in blunt terms.

(Fox Cert. Ex. L.)

Defendants also point to the testimony of co-worker James Valero, that Plaintiff emitted a loud "explosion of cursing" on a daily basis, and that Plaintiff's customers would call him up to complain about Plaintiff's argumentativeness. (Valero Tr. 76:9-77:8.) Defendants contend that they terminated Plaintiff's employment on January 5, 2013 because of all of these issues.

The burden now shifts back to Plaintiff, as the Third Circuit has explained:

> If the employer satisfies this second step, the burden shifts back once more to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual. In *Fuentes v. Perskie*, this Court recognized two ways in which a plaintiff can demonstrate that the employer's legitimate, nondiscriminatory reason was pretextual. The first way to show pretext is for the plaintiff to point to evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action. In order to raise sufficient disbelief, the evidence must indicate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons. Alternatively, the second way a plaintiff can establish pretext is to point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was "more likely than not a motivating or determinative cause" of the employer's action.

Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644-45 (3d Cir. 2015) (citations omitted). Plaintiff in this case has followed the first approach, attempting to show that the employer's explanation is not worthy of credence. First, Plaintiff challenges the testimony from Connors and from Valero:

> The way in which these complaints were characterized by Mr. Connors and Mr. Valero infers that they believed Plaintiff was a stereotypically loud, outspoken person of color. Plaintiff took these types of complaints, which were communicated to her by Mr. Keck only right before she was fired, to signal a commentary on her gender, race and national origin. It is notable that there were no reports of intimidating behavior, disruptiveness in the workplace or vulgar language in Plaintiff's evaluations before the last one used by Mr. Keck to fire the plaintiff.

(Pl.'s Opp. Br. 14.) Plaintiff does not support these assertions with any citations to evidence of record. Plaintiff has pointed to nothing in the testimony of either Connors or Valero that relates to racial or ethnic stereotypes. Even if it is true that Plaintiff interpreted her co-workers' complaints as commentary on her race, gender, and national origin, she has not pointed to any evidence from which a reasonable jury could come to the same conclusion. Finally, the argument that earlier performance evaluations of Plaintiff had not raised any complaints about

8

her workplace behavior (supported by Plaintiff's sworn statement) is irrelevant to the question of whether the explanation – that Plaintiff mishandled the L'Oreal account in the fall of 2012 – is worthy of credence.[3]

Plaintiff next raises the point that Defendants in actuality never lost any L'Oreal business. In support, Plaintiff's Rule 56.1 statement cites the Connors deposition testimony, but the cited section (Connors Dep. 130:21-24) does not support that inference: although Connors testified that Defendants continued to do business with L'Oreal after Plaintiff was fired, he was unable to answer the question of whether any business had been lost. (Connors Dep. 130:21-24.) Plaintiff points to no evidence which tends to show that Defendants' explanation that Plaintiff mishandled the L'Oreal account in the fall of 2012 is not worthy of credence.

Plaintiff has thus failed to carry her burden at the third step of the McDonnell Douglas analysis: she has failed to offer evidence from which a reasonable jury could conclude that the employer's reasons for terminating her are not worthy of credence. The only even slightly meritorious argument she makes is that previous performance reviews had not alleged any

---

[3] Plaintiff cites Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 269 (3d Cir. 2005) as authority for the proposition that "an employers' dismissal of an employee for reasons prior to which it never raised with the employee can also support a finding of pretext." (Pl.'s Opp. Br. 15.) This is a mischaracterization of what the Third Circuit actually stated about evidence of prior poor performance reviews: "If, however, there was no such evidence and there was evidence of discriminatory behavior, then the employer's performance-based reasons could be found to be pretextual." Id. This does not support the proposition that absence of evidence of prior poor performance reviews, alone, supports a finding of pretext. Rather, the Third Circuit said that a finding that " there was no such evidence *and* there was evidence of discriminatory behavior" could support a finding of pretext. Id. (emphasis added). In the instant case, Plaintiff has not pointed to evidence of discriminatory behavior. Moreover, Third Circuit law appears to be contrary to Plaintiff's position: "prior good evaluations alone cannot establish that later unsatisfactory evaluations are pretextual." Billet v. CIGNA Corp., 940 F.2d 812, 826 (3d Cir. 1991).

workplace misbehavior. This Court finds that this, without more, is not sufficient to persuade a reasonable jury that the explanation involving workplace misbehavior is unworthy of credence. Moreover, Plaintiff has offered no evidence or argument that the explanation involving the mishandling of the L'Oreal account is not worthy of credence. As such, she has failed to defeat Defendants' motion for summary judgment on the First Count. As to the First Count, Defendants' motion for summary judgment will be granted.

Defendants also move for summary judgment on the Second Count, for discrimination on the basis of gender, in violation of the NJLAD. Again, the Second Count in the Complaint is pled generally and does not identify the misconduct alleged to constitute discrimination in violation of the NJLAD. Plaintiff's opposition brief contains only one section which addresses her NJLAD claims in the First and Second Counts. This section, already discussed, does not offer any additional argument or evidence about gender discrimination. In opposing the motion for summary judgment on the Second Count, Plaintiff relies on the same arguments – that Defendants' explanations are not worthy of credence and are a pretext for illegal gender discrimination – that this Court has already considered and rejected. As such, Plaintiff has failed to defeat Defendants' motion for summary judgment on the Second Count. As to the Second Count, Defendants' motion for summary judgment will be granted.

Plaintiff's opposition brief withdraws her retaliation claims. The Complaint contains two retaliation claims: the Third Count (violation of NJLAD) and the Fourth Count (violation of § 1981). Because Plaintiff has withdrawn these claims, as to the Third and Fourth Counts, Defendants' motion for summary judgment will be granted.

Lastly, Defendants move for summary judgment on the Fifth and Sixth Counts, for

violation of the New Jersey Equal Pay Act ("NJEPA"),[4] N.J. Stat. Ann. § 34:11-56.1, and the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Defendants move for summary judgment on the ground that Plaintiff cannot make out a *prima facie* case. The summary judgment burden then shifts to Plaintiff to point to evidence sufficient to persuade a reasonable jury to find the elements of a *prima facie* case.

The Third Circuit has summarized the legal framework for deciding an EPA claim as follows:

> [C]laims based upon the Equal Pay Act, 29 U.S.C. § 206 et seq., do not follow the three-step burden-shifting framework of *McDonnell Douglas*; rather, they follow a two-step burden-shifting paradigm. The plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing "equal work" – work of substantially equal skill, effort and responsibility, under similar working conditions. The burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act.

Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000) (citation omitted). Thus, to defeat Defendants' motion for summary judgment, Plaintiff must point to evidence of record that demonstrates that an employee of the opposite sex was paid differently for performing work of substantially equal skill, effort and responsibility, under similar working conditions. Plaintiff's opposition brief, however, gives brief and confusing treatment to the effort to show the evidence that supports her *prima facie* case. After a detailed review of the law, and a recap of some of her employment history, Plaintiff offers this section, here quoted in its entirety:

> Plaintiff's duties were determining pricing on potential sales and orders, getting

---

[4] In two places, the Fifth Count references NJLAD, rather than NJEPA, but this appears to have been a drafting error. The parties have litigated the Fifth Count as a NJEPA claim, not a NJLAD claim. To the extent that the Complaint asserts the Fifth Count under the NJLAD, this Court finds that Plaintiff has abandoned that claim.

11

> specifications for orders placed by the client, getting prototypes made up by the design team at Pratt Display for the client, getting finished products to the client and all interaction required with the client to get whatever information was needed to make a sale and take orders on a sale. Plaintiff received a salary increase after Ms. Oakley left because of her increased responsibilities on the skincare line. Eventually, Defendants agreed to pay Plaintiff commissions in 2011, because she was maintaining the existing L'Oreal business by selling displays. (Ex. 12, Compensation Emails.)
>
> Although the Defendants argue that Plaintiff's commissions had nothing to do with sales, the evidence contradicts that argument. Plaintiff's work on the L'Oreal account was substantially similar to the sales function that Mr. Valero had. Moreover, the account that Plaintiff maintained was turned over to Gary Ludekke, another sales representative. Additionally, Plaintiff was unique in that she actually performed the work of two positions (duties split between two white males once she was fired) and she acted as the project manager for her own sales account. In that sense, her comparators are not just Mr. Valero and Mr. Ludekke, but also Mr. Rudnicki and Ms. Suter, all of whom were Caucasian, three of whom were male and all of whom were paid more than the Plaintiff.

(Pl.'s Opp. Br. 19.) This section not only fails to point to evidence sufficient to demonstrate that Plaintiff was paid less for performing equal work than a male co-worker, but it asserts that Plaintiff was uniquely situated rather than similarly situated: "Plaintiff was unique in that she actually performed the work of two positions (duties split between two white males once she was fired) and she acted as the project manager for her own sales account."[5] (Id.) Even setting aside that the argument contains no citations to record evidence, no reasonable jury could hear this and find that an employee of the opposite sex was paid differently for performing work of substantially equal skill, effort and responsibility, under similar working conditions.

Plaintiff has failed to show that she can make out a *prima facie* case of a violation of the

---

[5] Furthermore, in her sworn statement, Plaintiff states: "No other project manager got commissions." (Castro Dec. ¶ 60.) Plaintiff has thus herself asserted two important ways in which she was uniquely, rather than similarly, situated. Plaintiff's opposition brief contains no arguments or citations to evidence from which one could reasonably conclude that she and a male manager were similarly situated.

12

EPA.  As to the Sixth Count, Defendants' motion for summary judgment will be granted.

As to the NJEPA claim, the Fifth Count, the parties dispute the standard that this Court should apply to decide whether Plaintiff has made out a *prima facie* case.  Defendants contend that EPA claims and NJEPA claims "are analyzed under the same rubric."  Plaintiff contends that she has the option of using either the EPA standards for the *prima facie* case, or Title VII standards.  This Court need not resolve this dispute because, even if Plaintiff is correct and she need only satisfy the Title VII requirements for a *prima facie* case, she has not met them.  Plaintiff contends that, to make out a *prima facie* case under Title VII, she must show that her work was "similar" to a comparable employee's work, but with inferior pay.  Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 109 (1990); Bitsko v. Main Pharmacy, Inc., 289 N.J. Super. 267, 273 (N.J. Super. Ct. App. Div. 1996).

Plaintiff has not pointed to evidence that her job was similar to the job of any comparator.  Her opposition brief cites no evidence and, in fact, makes no case that she and a comparator had similar jobs.[6]  Rather, as already quoted, the brief asserts that Plaintiff was uniquely situated in her job responsibilities, and states: "none of these comparators was responsible for both the sales and project management of an account."  (Pl.'s Opp. Br. 19, 20.)  If Plaintiff contends that her job was unique, how can she also contend that her job is similar to another person's?  These facts make this case similar to one Plaintiff relies on, Puchakjian v.

---

[6] Nowhere in the opposition brief – neither in the "Argument" section nor in the "Statement of Facts" section – does Plaintiff identify a comparator and point to evidence that she and the comparator had similar jobs.  Nowhere in the brief does Plaintiff identify the duties of her position, as well as those of a comparable position, to show that the two positions are similar.  Plaintiff is correct that the burden of proving a *prima facie* case is "not onerous," but the similarity between jobs must, nonetheless, be proven.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Twp. of Winslow, 804 F. Supp. 2d 288, 301 (D.N.J. 2011). In Puchakjian, the court focused on the plaintiff's statements that her job responsibilities were not similar to the duties of her comparators, and stated that "on that basis alone, Defendant would be entitled to summary judgment." Id. at 302.

Nor does Plaintiff's Rule 56.1 Statement of Material Facts point to evidence that might persuade a jury that she and a comparator have similar. To the contrary, it states:

> [A]lthough Plaintiff acted as a project manager, she also had a role in sales. . .
>
> In his deposition testimony, Mr. Sandberg's descriptions of the responsibilities of
> a sales representative and those of a project manager combined matched
> plaintiff's own description of the entirety of her job responsibilities.

(Pl.'s 56.1 Resp. to ¶ 97.) Thus, not only has Plaintiff not presented a *prima facie* case that similar jobs have been compensated unequally, the points she has made tend to demonstrate that her job was not similar to the jobs of her co-workers. Thus, even if Plaintiff is correct that the Court evaluates her NJEPA *prima facie* case under the law of Title VII, she has not satisfied the Title VII requirements for a *prima facie* case of unequal pay. As to the Fifth Count, Plaintiff has failed to defeat Defendants' motion for summary judgment. As to the Fifth Count, the motion for summary judgment will be granted.

Defendants' motion for summary judgment is granted in its entirety.

                                                      s/ Stanley R. Chesler
                                                STANLEY R. CHESLER, U.S.D.J.

Dated: February 7, 2018